## SILAS FULLER *v.* JANE FULLER, HIS WIFE.

WHERE, in an action of divorce by husband against his wife, she sets up among other things that he, at the time of their marriage, was the husband of one Frances B., and asks a decree declaring the marriage null; and to prove the marriage with Frances, reads in evidence a letter from plaintiff to her : *Held,* that assuming this letter affords proof of the marriage with Frances, it is not conclusive proof of the facts recited : it is but the admission of plaintiff; and other and contradictory proof being in evidence, and the jury having found the issue on this point against defendant, this Court will not interfere.

*Query :* Whether in such case, marriage of plaintiff with Frances can be proved by a letter from plaintiff admitting the fact.

Where a witness being sworn, states that he was fourteen years old and a Chileno, and did not know " the obligation of an oath ; " whereupon the Judge explained to him the nature of such obligation, and he was then permitted to testify—the other party objecting that he did not know the obligation of an oath : *Held,* that the witness was competent.

Practice Act, sec. 392, providing " that no person offered as a witness shall be excluded on account of his opinion on matters of religious belief," and the fourth section, art. one of the Constitution, to the same effect, mean that a witness is competent without respect to his religious sentiments or conviction—the law leaving his *competency* to legal sanctions, or, at least, to considerations independent of religious sentiments or convictions.

The complaint—in divorce by husband against wife—having charged adultery, committed with one Chase, he on the trial, as witness for defendant, denied the adultery or improper intimacy. On cross-examination plaintiff was allowed to ask witness as to the conduct of himself and defendant towards each other in traveling together, and their intimacy since the commencement of this suit : *Held,* that the cross-examination was proper as affecting the credit of the witness, and as enabling the jury to see what effect these things had, or might have had, upon his evidence.

APPEAL from the Twelfth District.

Suit by the husband against the wife for divorce, on the grounds of extreme cruelty and adultery. The substance of the complaint is, that they were married in June, 1851, and continued to live together until May, 1857 ; that between 1852 and 1858 defendant was guilty of extreme cruelty on various occasions, as follows, to wit : That in June, 1852, in San Francisco, she assaulted and beat him over the head with a shovel ; in July, 1853, on their ranch in Contra Costa county, she bit his arm, scratched his face and tore his clothes ; in July, 1854, at the same place, she assaulted him with a hatchet and crockery, and at the dinner table threw a

cup of hot tea on him ; in June, 1856, at same place, she beat him over the head and shoulders with a fence rail ; and about the same time and place, in presence of plaintiff, spat in the face of his brother, and called him a dog, puppy or brute ; in January, 1857, in San Francisco, she locked plaintiff in a room for an hour and a half, and after plaintiff got out and was going to his business, she followed him in the street for some distance, crying out, " Stop thief ! " in October, 1856, she seized and has ever since kept a note, just as it was signed by a debtor of plaintiff and was about to be delivered to him ; in 1859, in San Francisco, she knocked off his hat with her parasol, and tore his clothes; in 1857, she went to his place of business in San Francisco, and in a violent, noisy manner, abused plaintiff, and drove off all persons doing business with him ; and in January, 1858, did the same thing, and, in addition, took exclusive possession of the office of plaintiff's employer, and held it for several days ; meanwhile, by means of false keys, forcing locks of desks, got possession of all his papers and carried them off, excepting an old testament and a novel, which she returned ; she chased him over Telegraph Hill to annoy him; and in 1858, followed him with a loaded pistol, threatening to kill him ; that during nearly all the time they lived together she annoyed him by constantly interfering with his business, threatening him with personal violence, using towards him abusive epithets, such as, dog, viper, bastard, scoundrel, and finally driving him from the ranch ; that she is of violent passions, strong in body, and it is unsafe for plaintiff to live with her.

The complaint then charges adultery, committed at various times in 1855 and 1856, on said ranch, with M. S. Chase.

The answer denies all these allegations of cruelty, denies that she is, or ever was plaintiff's wife, and avers that they were formally married in 1851, and lived together as man and wife until March, 1857, when he deserted her and their child, a son, and has since neglected to provide for her except in the most meager way ; that on various occasions while they lived together, he treated her with extreme cruelty—charging her, in presence of others, with vile practices, threatening and inflicting violence ; that he pushed, kicked and struck her, and once, in 1857, fractured her hand ; and

Fuller v. Fuller.

that at divers times in the fall of 1857, he has committed adultery with dissolute women.

The answer also avers that, at the time of the formal marriage of plaintiff and defendant, he was and ever since has been the lawful husband of Frances Fuller, of Philadelphia, and willfully concealed from defendant such marriage; that at the time of her marriage, she had about $8,000 worth of property, mostly in cash, and other personal assets, all of which is set forth in a marriage contract, but has been taken possession of by plaintiff, and invested, and is now claimed by him. Prayer for divorce—if plaintiff proves he was not married to said Frances—for restitution of her separate property and division of the common property.

As this Court puts the case on the verdict of the jury and the competency of certain evidence, the testimony need not be given. On the trial, plaintiff introduced among other witnesses, James Cruz, who, being first sworn, was asked if he knew the obligation of an oath; and answering in the negative, and also that he was a Chilian and fourteen years of age, such obligation was explained to him by the Court, and he was permitted to testify—defendant objecting that he did not know the obligation of an oath. He testified to seeing defendant and one M. S. Chase on the bed together on one occasion on the ranch.

Chase was introduced for defendant, and, after testifying to doing business as attorney for both parties at Martinez, and at Fuller's ranch in Contra Costa county, and occasionally spending several days at a time on the ranch, denied any adulterous intercourse with defendant. On his cross-examination, plaintiff offered to ask the witness questions as to the conduct of himself and defendant in traveling together, and their intimacy after the commencement of this suit. Objected to by defendant as not proper cross-examination, and as having occurred since suit was brought. Overruled, and the testimony admitted.

Defendant also introduced in evidence a letter purporting to be written by plaintiff to Frances, the woman to whom he was averred to be married at the time of the alleged marriage between plaintiff and defendant. This letter was dated at San Francisco, and contains expressions tending to show that plaintiff and defendant were

man and wife—as " The happiness I might experience in having a loving and affectionate wife," and " in no one way have I ever wronged you in our marriage vow." The gist of the letter, however, is the upbraiding of defendant for her supposed infidelity to plaintiff, and allusions to the dishonor brought upon him and their children.

Plaintiff attempted to rebut the evidence as to his marriage with Frances, by showing that she was merely his mistress, and has since married one Lynch, with whom she is now living in Philadelphia.

The Court submitted to the jury special issues upon the questions of extreme cruelty and adultery on the part of defendant, as charged in the complaint, and the issues were found for plaintiff. Like issues, as to the cruelty and adultery on the part of plaintiff, and as to his former marriage, as charged in the answer, were also submitted to the jury and found in favor of plaintiff. Decree in favor of plaintiff, dissolving the bonds of marriage.

Defendant appeals.

*Wm. H. Clark*, for Appellant.

I.   The verdict of the jury is merely advisory. (*Bidleman* v. *Kewen*, 2 Cal. 248 ; *Dominguez* v. *Dominguez*, 7 Id. 424 ; *Braze* v. *Chevalier*, 9 Id. 353 ; *Duff* v. *Fisher*, 15 Id. 375 ; *Dewey* v. *Bowman*, 8 Id. 245 ; *Grayson* v. *Guild*, 4 Id. 122.) And the power of this Court to set aside the verdict should be exercised in divorce cases. (Bishop on Mar. and Div., sec. 315.)

II.   The evidence, by cohabitation and by his letter, proves the marriage of plaintiff with Frances Bartlett. Such evidence is competent to prove a marriage. (1 Greenl. secs. 103 to 107 ; 2 Phil. Ev. 279, note 332 ; 2 Stark. Ev. 6 Ed., 251 and note ; Buller's N. P. 27 ; *Case* v. *Case*, ante 598 ; *Graham* v. *Bennett*, 2 Cal. 503 ; 2 Greenl. Ev. secs. 461–463 ; 2 Doug. 170 ; 2 Phil. Ev. 522 and notes, and note 1091 ; 2 Kent, 87–88 ; Bishop Mar. and Div., sec. 320 ; *Morris* v. *Morris*, 20 Ala. 168 ; *Wright* v. *Wright*, 6 Texas, 3 ; *Trimble* v. *Trimble*, 2 Carter, 76 ; *Harmon* v. *Harmon*, 16 Ill. 85 ; 6 La. 43 ; 9 Mass. 492 ; 15 Id. 163 ; 6 Conn. 446 ; 4 Johns. 52 ; 7 Id. 314 ; *Regina* v. *Simonsto*, 1

Carr. & Kirw. 164; *Freeman's case*, 1 Russ. Cr. & Mis. by Graves, 217; *Rex* v. *Upton*, Ib. 218; *Rex* v. *Newton*, 2 Moo. & R. 503; *Riggs* v. *Curgenven*, 2 Wils. 395; 14 Ala. 546; 11 Ga. 53; Wood's Dig. 348, sec. 121; *Baker* v. *Baker*, 13 Cal.)

III.   The Court erred in admitting James Cruz, the Chileno, as a witness.   He did not know the nature of an oath.   The sense of religious obligation is of the essence of an oath.   (1 Greenl. Ev. secs. 328, 368; 1 Phil. Ev. 10; *People* v. *Bernal*, 10 Cal.) The intention of the Practice Act, sec. 392, was to dispose of those vexed questions and nice distinctions, as to the particular character of religious tenets necessary to be entertained, such as a belief in a future state of rewards and punishments, etc., in which the books abound.   Had it intended to entirely uproot the doctrines of the common law, and the usages of civilized nations on the subject, and deprive an oath of all its sanctity, it is reasonable to suppose plainer and less ambiguous language would have been used. Some religious belief seems to be implied as necessary, and the statute seems only to strike at the difference in the kinds of opinions entertained.   To qualify a witness ignorant upon this subject, no instruction given by the judge or others at the moment of trial will suffice.   He must be subjected to a course of religious instruction, necessarily occupying some considerable period of time; and the Court may put off the trial for that purpose, though at its discretion it may refuse the postponement, and exclude the witness.   So it has been held in the case of a child.   (*Rex* v. *White*, 2 Leach. Cr. Ca., 482, note *a*; *Rex* v. *Wade*, 1 Wood Cr. Cas. 86; and particularly see *Rex* v. *Williams*, 7 C. and P. 320; 1 Phil. 10–16.

Whether the trial ought to be put off for the purpose of instructing an adult witness has been doubted.   (*Rex* v. *Wade*, 1 Wood, Cr. Cas. 86.)

IV.   The evidence of the alleged *particeps criminis*, Chase, on cross-examination by Respondent's counsel, as to acts and conduct of himself and the Appellant and intimacy between them, not only after the acts charged in the bill, but also subsequent to the commencement of this suit, was inadmissible, and should have been ruled out by the Court below.   (2 Greenl. Ev. sec. 47; 14 Pet. 148; Whar. Am. Cr. Law, 358.)

The avowed object of the counsel for Respondent was, first, to show the *quo animo* of acts of previous intimacy within the time laid in the bill; second, to discredit the witness by showing his state of feeling arising from subsequent acts.    This is not permissible.    (13 Ala. 172; 1 Greenl. Ev. 852; 20 Ala. 52.)

It is not disputed that it is competent to discredit a witness, by interrogating him as to his state of mind or relation towards the parties for or against whom he testifies.    He may be asked directly as to whether he stands in the relation to them of friend or enemy, brother or other kinsman, lover or paramour.    But as to inquiries into a series of acts or circumstances outside of the issues, whereby to establish presumptions or probabilities, they cannot be allowed, unless their relevance is shown by direct connection with the acts already legitimately in evidence.

*S. H. Brodie,* for Respondent.                                  •

There was no evidence from which to find a former marriage between plaintiff and Frances Bartlett, and the submission of the question only gave the defendant an additional chance for a verdict. (1 Smith's 15 N. Y. Rep., 353.)

1st. Upon proof of marriage between plaintiff and defendant, nothing but proof of an actual marriage with Frances would do, especially when it is considered that Frances has since married another, viz: Lynch.    (*Case* v. *Case, infra; Rex* v. *Twyning,* 2 B. & Ald. 385.)

2d. Even if the proof of facts, from which a marriage with Frances might be inferred, would have been sufficient, still this case was deficient in proof.

III.    The District Court did not err in allowing James Cruz to testify.

This witness was a Chileno, and not understanding perfectly the English tongue, he did not know the meaning of the word obligation.    The District Judge instructed him as to the nature and obligation of an oath, and thereafter admitted him as a competent witness.    Our Constitution and Practice Act abolish all religious tests as to competency.    Constitution of California, art. 1, sec. 4.)

IV.    The conduct of defendant and Chase towards each other,

*pendente lite,* was admissible in evidence : 1st, to show the animus which characterized their prior conduct. (Bishop on Mar. and Div. sec. 433 ; *Lawson* v. *State,* 20 Ala. R. 65) ; 2d, to discredit the witness, Chase, by showing the probable state of his feelings toward the defendant up to the trial. (*Atwood* v. *Welton,* 7 Conn. R. 66 ; *Thomas* v. *Davis,* 7 C. & P. 350 ; *Simons* v. *Simons,* 13 Texas, 468–475.)

*Geo. F. and W. H. Sharp,* also for Respondent.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

It would subserve no useful purpose to go through the pleadings and proofs in this case. It is a bill for divorce, filed by the husband against the wife, upon charges of adultery and extreme cruelty. Upon either of these charges, if sustained, the plaintiff was entitled to a decree. The learned Judge below ordered special issues to a jury. These issues involved the principal matters of crimination and recrimination involved in the pleadings. The jury found for the plaintiff upon the two principal allegations of the complaint, and, upon this finding, the Court decreed for the plaintiff. We are asked to review the decree upon several grounds, no one of which is tenable.

1. It was submitted to the jury to find, whether the plaintiff was, at the time of his marriage with the defendant, the lawful husband of one Frances, or Frances Bartlett. A letter purporting to be that of the plaintiff to this woman was offered in proof to show his relations to her. This letter was admitted. It is contended that this letter affords proof of this supposed relation. But the letter, on the face of it, is not unequivocal ; and if it were, it is but the admission of the plaintiff—not conclusive proof of the facts recited ; and other and seemingly contradictory proof was offered, tending to show that the fact admitted was not true. Conceding that a marriage may be proved in this way in a case of this kind—which is going a good way—yet this concession will not help the defendant ; for we cannot relieve her from the rule we have often laid down, and which is indispensable to the discharge of our ap-

pellate duties, that, in a case of conflicting proofs upon issues of fact, we cannot sit in judgment upon the proofs. It is useless to trouble us with appeals upon such questions; for we have neither the time nor the means of satisfactorily adjusting such controversies. We do not see the witnesses nor hear their testimony; and we are unable to judge, for want of this necessary opportunity, of the relative weight to which these statements are entitled. The case then, as it stands, is simply the case of a conflict of testimony upon disputed facts, upon which case a jury and the Judge below have passed; and this is absolutely conclusive upon us.

2. The Court did not err in allowing the witness, Cruz, to testify. The witness seems to have been a foreigner. He was not disqualified by the mere fact that he did not, when first produced, understand the meaning of the word obligation, as applied to an oath; when this was explained, and the witness made to understand the obligation, it was enough to qualify him, if he were otherwise competent. The Practice Act, section 392, provides " that no person offered as a witness shall be excluded on account of his opinion on matters of religious belief," and this follows the 4th section of the 1st Article of the Constitution. We can assign to this language no other import than that a witness is competent without any respect to his religious sentiments or convictions; the law leaving this matter of *competency* to legal sanctions, or, at least, to considerations independent of religious sentiments or convictions.

3. Nor is the point better taken, that the witness, Chase, was asked certain questions as to his relations with, and conduct toward, the defendant, on his cross-examination. Under the circumstances this was proper, as affecting the credit of the witness, and as enabling the jury to see what effect these things had, or might have had, upon his evidence.

Judgment affirmed.

On petition for rehearing, Baldwin, J. delivered the opinion of the Court—Field, C. J. concurring.

We have gone over the testimony again in this case. It would subserve no useful purpose to recapitulate it, nor to comment on it. Both that of the plaintiff and of the defendant was precisely of that

character which could only be satisfactorily passed on by a jury. The counsel is altogether mistaken in saying that there is no conflict in the proofs of the recriminatory charges of defendant.  The testimony of Welch, which is the main proof in this respect, was mainly circumstantial, and much would depend upon the manner, bearing and character of the witness, as well as the peculiar nature of his disclosures.  He was not unimpeached, both directly and by circumstances, and even if not impeached, we could not on such an issue usurp the province of the jury by assigning conclusive force to the testimony of such a witness.

The questions were peculiarly issues of fact for a jury, and we should be reversing our whole course of decision, if we interfered with their finding in opposition to the ruling of the learned Judge who heard the proofs.

Rehearing denied.