Points decided.

[No. 2,916.]

# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* CYRUS SANFORD.

| 43 | 29 |
|----|-----|
| 78 | 77 |
| 43 | 29 |
| 88 | 260 |
| 43 | 29 |
| 99 | 545 |
| 43 | 29 |
| 105 | 502 |
| 43 | 29 |
| 116 | 511 |
| 43 | 29 |
| 149 | 708 |

INDICTMENT—SUFFICIENT CHARGE OF DEATH.—In an *indictment for* murder it was charged that the accused, "on the fourth day of September, A. D. 1870, at the county and State aforesaid, did feloniously, willfully, maliciously, and of his malice aforethought, shoot, kill, and murder one Enoch Barnes:" *Held,* to be a sufficient charge of the death of Barnes.

OBJECTION TO JUROR.—Where, in a criminal case, a juror whose name is on the poll tax list only, is sworn to try the cause, and the defendant receives the juror without objection as to his competency, he cannot be heard, after the verdict is rendered, to object that the juror was lacking in this particular.

POINT CONSIDERED AS WAIVED.—In a criminal case the defendant's counsel offered to question a witness as to her husband having, at her instance, approached the defendant's friends for the purpose of obtaining money from him. The proffer was denied by the Court "for the present." No exception was reserved, the proffer was not subsequently renewed, and no effort was made to obtain an ultimate decision on the point: *Held,* that it must be considered as waived.

TESTIMONY OF WITNESS NOT AN EXPERT AS TO SANITY.—A witness, even though not an expert, who details a conversation had between himself and another, may also, in connection therewith, state his opinion, belief, or impression as to the state of the mind of such person as these seemed to the witness at the time of the conversation.

RELIGIOUS BELIEF OF WITNESS—DYING DECLARATIONS.—No person is to be held incompetent to be a witness in this State on account of his opinions on matters of religious belief. This rule applies to dying declarations. The common law rule in this respect is abrogated.

ORAL INSTRUCTION IN CRIMINAL CASE.—The giving of an oral instruction to the jury, in a criminal case, without the consent of the defendant, is error; and the consent of the defendant cannot be presumed from his presence and failure to make the objection when the oral instruction is given.

APPEAL from the District Court of the Seventeenth Judicial District, County of Los Angeles.

The facts are stated in the opinion.

*Haven & Howard,* for Appellant.

The indictment does not state that Barnes died within a year and a day. (*People* v. *Michel,* 34 Cal. 211.)

The conviction was invalid because not found by a competent jury. The statute requires the juror to be assessed on the last assessment roll of his township or county, on real or personal property, or both. (Hit. Dig. 3870.) One juror was on the poll tax list only.

The Court erred in not permitting the defense to prove by the witness Dolores Orosco—the principal witness for the prosecution—that at her instigation her husband approached parties for the purpose of procuring money from the defendant to enable them to avoid her being a witness. Such testimony would have weakened, if not entirely destroyed the value of her evidence.

The Court erred in allowing the witness Burns, who was not an expert, to testify in regard to the condition of mind of the deceased at the time he made purported dying declarations. (24 N. Y. 298; 34 id. 190; 36 id. 276.) The proof does not show that the deceased was under a sense of immediate or impending dissolution, and it does show that he was not under any religious feeling when he made the purported dying declarations. Such declarations must not only be made under a sense of impending dissolution, but of his "accountability to his Maker, and the deep impression that he is soon to render to him the final account." (1 Greenl. Ev. 157.)

The Court erred in charging the jury orally. (*People* v. *Payne*, 8 Cal. 34; *People* v. *Bealer*, 6 Cal. 246; *People* v. *Demint*, 8 Cal. 423; *People* v. *Ah Tong*, 12 Cal. 345; *People* v. *Charles*, 26 Cal. 78.)

*Attorney General Jo Hamilton*, for Respondent.

By the Court, WALLACE, C. J.:

The defendant was convicted of the crime of murder in the second degree, committed in the felonious killing of one Enoch Barnes; and from the judgment rendered, and an

order of the Court denying his motion for a new trial, he prosecuted this appeal.

First—The first point made challenges the sufficiency of the indictment, which, after the usual caption, is as follows:

" The said Cyrus Sanford is accused by the Grand Jury of the County of Los Angeles, State of California, by this indictment, found this eighth day of September, A. D. one thousand eight hundred and seventy, of the crime of murder, committed as follows: The said Cyrus Sanford, on the fourth day of September, A. D. eighteen hundred and seventy, at the county and State aforesaid, did feloniously, willfully, maliciously, and of his malice aforethought, shoot, kill, and murder one Enoch Barnes, contrary to the form, force, and effect of the statute in such cases made and provided, and against the peace and dignity of the people of the State of California."

It is objected that " the indictment does not state that Barnes died within a year and a day," etc. This objection rests upon the circumstance that the time of the death is not specially stated; and if there be anything in the objection, it might have been extended further, as it is not specially stated that Barnes died at all. But the averment in substance is that he died on the fourth day of September, 1870, for it is alleged that on that day the prisoner, of his malice aforethought, did kill and murder him—and this, under the provisions of the Criminal Practice Act, is sufficient. (*People* v. *Cronin,* 34 Cal. 191.)

Second—There is nothing in the objection to the competency of the juror. It was the duty of the defendant in the first place to have examined him as to his competency in the respect referred to at the time the jury was impaneled. He does not seem to have made any objection to his competency even afterwards, but took his trial before him with a knowledge of the fact that his name was on the

poll tax list only, and not on the real or personal property tax list. Having deliberately taken his chance of a favorable verdict, he cannot be heard to object now that a juror of his own choosing was lacking in a qualification of this technical character. (*People* v. *Stonecifer*, 6 Cal. 405.)

Third—The record does not make it apparent that the Court definitively refused to permit the prisoner's counsel to interrogate the witness, Dolores Orosco, as to her husband having, at her instance, approached the prisoner's friends for the purpose of obtaining money from him. The proffer upon that point was denied by the Court "for the present," and no exception was reserved. The cross-examination of the witness was thereupon continued at considerable length upon other points; but the proffer was not subsequently renewed, nor was any effort made to obtain the ultimate decision of the Court thereon; and the point must, therefore, be considered as waived.

Fourth—The next point relied upon concerns the admissibility of the evidence given by Burns, the Sheriff, by whom the prosecution were permitted to prove certain dying declarations of the deceased. The witness was asked by the prosecution to state the condition of mind of the deceased at the time—whether it was clear or confused. This was objected to by the defense, because the witness was not a medical man, etc.; but the objection was overruled, and the witness answered in substance, that judging from the conversation of the deceased at the time, his mind was clear. It is said here, for the prisoner, that this was the expression of a mere opinion, by a non-expert witness, and should have been excluded on that ground. We do not think so. We understand the rule on this point to be that a witness, even though not an expert, who details a conversation had between himself and another, may also, in connection therewith, state his opinion, belief, or impression as to the state of the mind of such person, as these seemed or appeared to

the witness at the time of the conversation. The impression made upon the mind of Burns, to the effect that the mental condition of the deceased was unobstructed, was an impression he had formed by personal observation. He had heard the utterances of the deceased; these he could repeat, or substantially repeat, to the jury; but he had also observed his tone, gesture, appearance, and his general demeanor at the time; these he could not be expected to reproduce to the jury as he saw and observed them; nor could he even describe them in giving his evidence, without in some degree indicating his own opinion or impression of what they were—and this, it is said, he may not be permitted to do. We think, however, that this cannot be said to be an expression of the mere opinion of the witness in the objectionable sense. In the language of Judge Gaston: "It approaches to knowledge, and *is knowledge*, so far as the imperfection of human nature will permit knowledge of these things to be acquired; and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observations of others." (2 Ired. 78.)

Fifth—It clearly appears by the evidence that at the time he made his statement to Burns of the circumstances under which the prisoner inflicted the wound upon him, the deceased had no hope of recovery. This is not seriously controverted, but it is said that at all events "it is obvious that the deceased when he made the purported dying declarations was not under any religious feelings." Burns, the witness, said: "I saw no change in his actions, only such as one would show suffering from pain. He did not speak of a future state—he gave me no dying words to carry to his family."

The rule by which dying declarations are admitted is set down in the authorities as constituting an exception to another rule—the general one, by which hearsay evidence is rejected. "The persons whose declarations are thus admitted are considered as standing in the same situation as if they were sworn; the danger of impending death being equivalent to the sanction of an oath." (1 Greenl. Ev., Sec. 157.) It is true that the author immediately adds that where it appears that the declarant is wanting in religious sense of accountability to his Maker his dying declarations are not admissible. The result is that if the declarant, while living, would have been incompetent to testify as a witness in the case, because of want of a religious sense of accountability, then his dying declarations, if he remained in the same condition of mind on that point, must, under the rule of the common law, have been excluded. That in this State, however, the common law rule in that respect has been abrogated, and that no person is to be held incompetent to be a witness on account of his opinions on matters of religious belief, is clear. (Const., Art. I, Sec. 4; Hitt. Genl. Laws, Sec. 5330; 17 Cal. 605.) It mattered not, therefore, upon the point of the mere *competency* of the evidence, even had it appeared that the deceased had no religious belief. But however this may be, it did not in anywise appear what the views of the deceased, in fact, were upon the subject of a future state, or of his accountability to his Maker. Burns states that he said nothing on that subject, and Burns is the only witness who refers to it at all. But the mere silence of the deceased in that respect would not indicate the particular state of his mind upon such matters. We are of opinion, therefore, that the objection of the prisoner to the proof of the dying declarations of the deceased were correctly overruled.

Sixth—The evidence being in and the argument of counsel concluded, the Court proceeded to charge the jury. In respect to the charge the bill of exceptions states as follows:

"The Court read from the statute several sections of the criminal code, but requested the Clerk to note the sections read as part of the instructions given at the instance of the District Attorney, and occupied some length of time in making to them oral remarks; observing, among other things, that they were exclusive judges of the fact; that they could reject the whole or part of the evidence; if the Court erred there was a higher tribunal to which the defendant could resort; that there was a deep responsibility resting upon them; that they must discard from their minds all bias, and regard the testimony and make a conscientious decision." There was no consent upon the part of the prisoner that the charge might be given in any other manner than in writing.

The amended statute of May, 1855, in reference to the charge of the Court in criminal cases, provides as follows: "Such charge shall be reduced to writing before it is given; and in no case shall any charge or instructions be given to the jury, otherwise than in writing, unless by the mutual consent of the parties." (Stats. 1855, p. 275.) In *The People v. Beder*, 6 Cal. 246, it was held that "the rule prescribed by the statute is mandatory and not directory;" and the judgment was reversed because the statute had not been observed by the Court below. In *People* v. *Payne*, 8 Cal. 341, an instruction had been given in writing, but a verbal qualification had been added, and the judgment there was reversed. In *People* v. *Demint*, 8 Cal. 423, the judgment was reversed upon the sole ground of non-compliance with the statute in respect to reducing the charge of the Court to writing before it was given to the jury. In *People* v. *Ah Fong*, 12 Cal. 345, the judgment was reversed here on the same ground, BALDWIN, J., delivering a somewhat elaborate opinion to the effect that a charge given, not in writing at the time, amounts, *per se*, to an error for which the judgment will be reversed, and that an offer to reduce it to writing after it had been given, would not cure the error. In *People*

*v. Shaw,* 26 Cal. 78, a written charge had been delivered, and the jury had retired; they subsequently came in and were orally instructed by the Court in explanation of the charge already given in writing—the defendant neither consenting or objecting to the oral explanation. The judgment was reversed, the Court saying: " The cases are numerous and uniform to the point that the giving of an oral charge or instruction to the jury, in a criminal case, without the consent of the defendant, is error, and that his consent cannot be presumed from his presence and failure to make the objection when the oral instruction is given."

For upwards of fifteen years this statute has been in force and during all that time the decisions here have been uniform, not only as to the meaning and most obvious intent of the Act itself, but also as to the consequences certain to follow here upon its non-observance in the trial Court.

We hope that we have seen the last case brought here upon this point.

Judgment reversed and cause remanded for a new trial.


CROCKETT, J., concurring specially:

I concur in the opinion of the Chief Justice, except in so far as it holds that in this State dying declarations are admissible in evidence, even though it affirmatively appears that the dying person had no religious faith whatever, or any sense of future accountability. If it be conceded that his opinion in matters of religious faith, or his belief as to a state of future accountability, do not affect the competency of a witness testifying under oath, it by no means results that the same rule is applicable to dying declarations. The law has provided proper penalties for perjury, which are supposed to afford a sufficient guaranty that persons testifying under oath will speak the truth; and the only ground on which dying declarations are admitted in evidence is, that a

person who is about to die and is conscious of that fact, has at least as strong a motive to speak the truth as a witness testifying under oath, who may be visited with a prosecution for perjury if he testifies falsely. But a dying person who is wholly devoid of religious faith and who does not believe in a state of future accountability, has no other motive to speak the truth than his mere abstract sense of right and wrong. If he believes that he is in no danger of punishment, either in this world or the next, if his declarations should be willfully false, there would be nothing left but a mere abstract sense of right and wrong compelling him to speak the truth. If this alone be sufficient to justify the admission of his declarations, there is no reason why the same rule should not be applied to a witness in good health. If I correctly understand the reason of this rule which admits dying declarations in evidence, it is that in the solemn hour of death a dying person, who is about to enter upon a future state of existence in which he is to be, in some manner, held accountable for his acts in this life, has at least as strong a motive to speak the truth as if he were acting under oath, and for this reason the oath is dispensed with. But there would be no such motive if he did not believe in a future state.