[Crim. No. 1069. Third Appellate District.—February 27, 1929.]

THE PEOPLE, Respondent, v. C. D. PLUM, Appellant.

Nathan C. Coghlan and E. H. Lomasney for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant appeals from a judgment of conviction had upon an information charging grand theft. The information is in the following words and figures, omitting title:

"The District Attorney of the County of Plumas, State of California, hereby accuses C. D. Plum of a felony, to-wit, grand theft, in that on or about the 3rd day of May, 1928, in the County of Plumas, State of California, he unlawfully took the property of A. Newhart, consisting of fifty thousand board feet, or thereabouts, of lumber, of the value of Nine Hundred Dollars in lawful money of the United States.

"Dated, June 6, 1928.

"S. C. YOUNG,

"District Attorney of the County of Plumas, State of California."

■ While no demurrer was filed to the information, it is urged upon this appeal that the information does not state a public offense, in that it does not charge that the lumber taken was taken feloniously, or with intent to steal. Section 952 of the Penal Code as amended in 1927 [Stats. 1927, p. 1043], in setting forth what shall be necessary to charge the crime of grand theft, reads: "In charging theft it shall be sufficient to allege that the defendant unlawfully took the property of another." An information charging theft in the language of section 952 of the Penal Code has been held sufficient, and any question in relation thereto we think foreclosed by the following cases in which the informations were identical with the one at bar: *People* v. *Manchell,* 91 Cal. App. 788 [267 Pac. 718] ; *People* v. *Plum,* 88 Cal. App. 575 [263 Pac. 862] ; *People* v. *Plum,* on petition for rehearing, 88 Cal. App. 585 [265 Pac. 322]. In the Manchell case the information reads, so far as pertinent here: "unlawfully took the property of Harley S. Tyler and W. H. Rice," etc.—language identical with the charge in the case at bar. We think a reference to the three cases just cited is all that is necessary to answer appellant's contention as to the insufficiency of the information.

Appellant's second contention is that he was convicted by an incompetent juror, in that it is shown by an affidavit of one of the jurors that at the time of the trial he had not been a resident of the county of Plumas for a period of one year immediately preceding his selection as a juror. ■ The law is well settled that the affidavit of a juror cannot be considered to establish his incompetency or to impeach a verdict in which such juror participated. (*People* v. *Kady,* 60 Cal. App. 661 [214 Pac. 393], and cases there

cited.) ■ There is no showing in the record that appellant made any effort to ascertain the alleged incompetency of the juror Barlow upon his *voir dire* examination. Not having done so, no objection can now be urged to the competency of the juror, with whom the appellant appeared to be satisfied at the trial. The alleged objection cannot be raised upon appeal. (*People* v. *Mortier*, 58 Cal. 266; *People* v. *Sanford*, 43 Cal. 29.) Other cases might be cited, but the law is well settled in this state and needs no further comment.

In his assignment of errors the appellant sets forth eight specifications in which he contends: 1. That the facts found in the record are not sufficient to sustain the verdict. 2. That the court erred in preventing a full inquiry into the agreements between the several parties. 3. That the court erred in sustaining the objection of the district attorney to the following question of the defendant's counsel: "Q. You cannot give me any idea about it, whether it was fifty thousand or five hundred thousand feet?" 4. That the court erred in refusing, on objection of the district attorney, to allow the defendant on cross-examination to inquire of the witness Newhart as to a contract in which reference was made to the lumber-yard at Crescent Mills, and the payment of $150 a month rental thereof. 5. That the court erred in permitting the district attorney to introduce self-serving and hearsay statements of the witness Newhart as to the owner of the lumber in controversy. 6. That the court erred in permitting the witness Forgay to testify, over defendant's objection, that he had a conversation with the defendant with reference to the shipment of certain pine lumber belonging to Wolpert Lumber Company. 7. That the court erred in allowing, over objection, the witness Morris to testify in rebuttal to a tally of lumber in the yard at Crescent Mills, which the witness, on direct examination, stated occurred in the middle of May, 1927, but admitted, on cross-examination, occurred in March, 1927; and 8. That the information does not state a public offense. The eighth assignment we have already answered.

■ The testimony set out in the record shows that during the year 1926 F. A. Newhart operated the Forgay Mills; that he was buying the mill under a contract from James

Forgay and others; that during said time Newhart cut some lumber and piled the same in the yard at Crescent Mills. While controverted by the appellant, we think the record shows that Newhart did not transfer any lumber to the Wolpert Lumber Company, but sold to them only what rights he had under the contract with the Forgay Company relative to the lumber mill and the right to cut standing timber and mill the same. There is testimony in the record that Newhart had some 52,000 feet of measured lumber in the yard at Crescent Mills; that this lumber was of such a kind that it could be easily distinguished from other lumber; that it had been marked by Newhart; that this lumber was stacked in one pile, containing about 52,000 feet, and was of the species called fir; that this lumber was never sold by Newhart; that after the transfer of Newhart of his interest in the Forgay contract, this lumber remained piled in the yard at the Crescent Mills, and was last seen by him at the yard late in 1927; that, on May 4, Newhart went to Crescent Mills and did not find his lumber there; that Newhart searched for his lumber, and subsequently found it piled in a yard belonging to the North Sacramento Box and Lumber Company, at North Sacramento; that Newhart did not give permission to anyone to ship the lumber. There is testimony in the record that during the latter part of the month of April, 1928, and to and including the second day of May, 1928, the defendant shipped the lumber in question from the Crescent Mills to the box factory at Sacramento. The testimony of Newhart is to the effect that the lumber was worth about $1,040. The testimony of Forgay is also to the effect that he knew that Newhart had lumber piled in the yard at Crescent Mills during the fall of 1926 and 1927. In this particular it is urged by appellant that Forgay subsequently testified that there was no lumber in the yard at Crescent Mills belonging to Newhart in May, 1927. This contention is based upon the following testimony: "Q. (By Mr. Young for the People of Mr. Forgay): I would like to ask you now if, during the month of April, 1928, you saw any lumber in the yard at Crescent Mills belonging to Albert Newhart?" (After considerable discussion of objections interposed by the defendant, the witness Forgay answered): "In the forepart of April there was. Q. (By Mr. Young for the People): And what kind of lum-

ber was that, Mr. Forgay? A. Fir lumber." Mr. Young, for the prosecution, asked the following question: "And is that fir lumber that you saw there in the fore part of April, 1927, was that there in May, 1927, in the latter part of May?" To which the witness answered: "No, sir."

It is evident from the foregoing testimony, where the witness had stated that the lumber in question was at Crescent Mills in April, 1928, that the prosecuting officer, in asking the final question in his attempt to show that the lumber had been taken away, used the figures, in his question, "1927" instead of "1928," and the witness answered without detecting the error. The jury had a right, from the previous answer, to draw the conclusion that it was in April, 1928, that Forgay saw the lumber, and that in May of the same year it was not there. This conclusion is further strengthened by the testimony elsewhere found in the record showing that the fir lumber identified by Newhart as belonging to him, and found by him in Sacramento, was shipped from the Crescent Mills in 1928, as shown by the records of shipment made by railroad.

Appellant contends that, by reason of an assignment made by Newhart to the Wolpert Lumber Company, and by Wolpert Lumber Company to the appellant, the appellant became the owner of the fir lumber, for the taking of which the appellant was found guilty of grand theft. The agreement is set out in the transcript, and reads as follows:

"This agreement, made the 24th day of May, 1926, between the Forgay Lumber Company, a copartnership, of the county of Plumas, state of California, the party of the first part, and A. P. Newhart, of San Rafael, California, the party of the second part, witnesseth:

"That whereas, the party of the first part is the owner of certain timber situated and standing on what is known as the 'Forgay Ranch,' in Indian valley, Plumas county, California, together with a certain sawmill and logging equipment used in connection therewith, and the said party of the second part is desirous of purchasing the said timber, sawmill and equipment;

"Now, therefore, it is hereby understood and agreed that the party of the first part agrees to sell, and the party of the second part agrees to buy, the said timber, sawmill and equipment upon the following terms and conditions, to-wit:

All merchantable standing timber, consisting of three trees at least 16 inches at butt, regardless of specie, is to be purchased by the party of the second part at the rate of four dollars ($4.00) per thousand feet, board measure, scaled in accordance with 'Spaulding Scale' upon delivery at pond. Said payment to be made on the fifth and twentieth day of each month for all logs delivered up to and including the first and fifteenth day of each month.

"It is further understood and agreed that the party of the second part shall have the use of said sawmill and equipment and shall pay as rental therefor a sum equal to one dollar for each one thousand feet of lumber cut or manufactured in said mill, said cut and payment to be based upon same scale and subject to same terms of payment as hereinabove specified in connection with payment for stumpage. It being expressly agreed, however, that the value of said sawmill and equipment is hereby fixed at the sum of seven thousand five hundred dollars ($7,500.00), and whenever the rental herein specified shall equal that amount the said sawmill and equipment shall become the property of the party of the second part, and the party of the first part hereby agrees to make, execute and deliver to him any proper and necessary bill of sale for the conveyance thereof. It being understood that the party of the first part shall at all times be considered and deemed the owner of all lumber manufactured at said mill and shall have full title thereto until the payments herein provided for have been made. All payments provided for in this agreement shall be made to the credit of the party of the first part at the Indian Valley Bank, Greenville, California.

"The party of the second part agrees, at his own cost and expense, to make all necessary repairs on said sawmill, and to keep the same in good repair and condition and pay all charges for electrical power, labor and other expense, and to keep and save harmless the said party of the first part from any charge or liability by reason of the claims of laborers, mechanics, or by reason of injury to or the death of any employee.

"It is further understood and agreed that the party of the second part will cut, remove, and manufacture the timber now standing on the premises of the party of the first part before cutting or manufacturing timber on other lands, and

that the said sawmill shall not be removed from its present location until all the timber belonging to said party of the first part has been manufactured, or paid for, in accordance with the terms hereof.

"The party of the second part hereby agrees to enter into the possession of the said sawmill and commence the operation thereof on or before the 15th day of June, 1926, and to diligently continue the operation thereof thereafter, to the end that said sawmill shall be operated to the full capacity thereof. It being understood, however, that labor conditions, strikes or other conditions over which the party of the second part has no control shall not be a violation of this agreement.

"It is further understood that the party of the second part shall insure, or cause to be insured, all lumber piled or stored in an amount equal to that due the party of the first part, and that all policies of insurance shall be made payable to the said party of the first part as its interest may appear therein, and that the said sawmill shall be insured jointly by the parties hereto.

"In witness whereof the said parties have hereto set their hands the day and year first above written.

"FORGAY LUMBER COMPANY,

"By J. A. FORGAY, Manager.

"A. P. NEWHART,

"Party of the second part.

"For value received I do hereby assign and set over to Wolpert Lumber Company the within agreement and all benefits thereunder,

"Dated: This sixth day of September, 1926.

"AL NEWHART.

"Consent is hereby given to the assignment of the within agreement.

"FORGAY LUMBER COMPANY, a Copartnership,

"By J. A. FORGAY."

The record shows that after the assignment executed by Newhart to Wolpert Lumber Company the appellant went into the possession of the mill and property described in the agreement and proceeded to operate the mill and to cut and reduce to lumber the standing timber mentioned in the agreement. It will be observed, also, that in the assignment executed by Newhart to the Wolpert Lumber Company

no lumber whatever was transferred by Newhart to the Wolpert Lumber Company. On May 9, 1927, the Wolpert Lumber Company executed and delivered to the appellant the following bill of sale:

"Know all men by these presents: That I, Fred C. Wolpert, doing business under the firm name and style of Wolpert Lumber Company, party of the first part, for and in consideration of the sum of one (1) dollar and certain other valuable consideration to me in hand paid by C. D. Plum, the party of the second part, the receipt whereof is hereby acknowledged, do by these presents, sell, assign and transfer unto the said party of the second part all lumber of whatsoever kind and nature, including ties, the property of the Wolpert Lumber Company, now located in the lumber yard at Crescent Mills, California, and all other lumber, right or claim for lumber, the property of Wolpert Lumber Company, which was removed from said lumber yard or from the mill known as Forgay Mill, Crescent Mills, California, without knowledge or consent of Wolpert Lumber Company or F. C. Wolpert; also all lumber of whatsoever kind or nature belonging to Wolpert Lumber Company located at said Forgay Mill aforesaid.

"Dated: May 9, 1927.

"F. C. WOLPERT,
"Party of the First Part."

There is testimony in the record that after the execution of the bill of sale the appellant transferred his rights thereunder to his wife, but as that is immaterial, no further mention need be made thereof.

Without further recital of the testimony in the record it is sufficient to say that there was ample testimony to justify the conclusion of the jury that Newhart had some 50,000 feet of fir lumber piled at the Crescent Mills belonging to him, in April, 1928, and that this lumber was taken possession of without permission of anyone, by the appellant, and shipped to a box factory at Sacramento, of which the appellant was the manager.

The second assignment of error does not appear to us to require any separate consideration.

The third assignment, relative to the quantity of lumber cut and piled at Crescent Mills by the Wolpert

Lumber Company, whether it was 50,000 feet or 500,000 feet, was a question upon cross-examination. The direct examination had made no reference to any lumber cut or piled by the Wolpert Lumber Company, and was not cross-examination. No possible injury resulted therefrom, as the appellant had abundant opportunity to otherwise show the number of feet of lumber cut and piled by the Wolpert Company. Nor was it material whether the lumber cut by the Wolpert Lumber Company came from the same vicinity. The only material inquiry would be whether the Wolpert Lumber Company had piled fir lumber so near to the lumber owned by Newhart that the appellant, in shipping from the yard, might, through error or confusion, have erroneously taken the Newhart lumber. We do not find anything in the appellant's testimony which would support this theory. His testimony is that he took only the lumber belonging to himself.

In relation to the fourth assignment of error with reference to a certain contract or lease of a lumber-yard at Crescent Mills, in which there was a provision for the payment of $150 a month or $150 a year—(the record leaves it uncertain as to the time specified)—it is sufficient to say that the contract was not filed as an exhibit, is not preserved in the record, and is not presented to us in such a manner that we can say that the court erred in its rulings.

The fifth assignment of error relates to the testimony of a witness who stated that he was going over the lumber-yard with Newhart where the 50,000 feet of fir lumber claimed by Newhart was piled, and that Newhart pointed the same out to him. This witness also testified that the lumber was subsequently shipped by the appellant. So far as the statement of Newhart was concerned, that the lumber belonged to him, it should have been stricken from the record, but for the purpose of identifying the pile of lumber pointed out by Newhart, and subsequently shipped by the appellant, it was admissible. It is true that the testimony of the witness that other lumber was piled in the yards at a different location, and that he had not seen the pile of lumber pointed out by Newhart for a long time before it was shipped by the appellant, tended to weaken the witness' testimony, but its force and effect were for the jury. We do not think that the hearsay portion of the testimony was

prejudicial, or at least not sufficiently so to warrant interference with the verdict.

The sixth assignment of error relates to a conversation had between the appellant, and Mr. Forgay relative to the shipment of 9,000 feet of lumber, in which Mr. Forgay said to Mr. Plum that he had no right to ship that certain 9,000 feet of lumber because the Wolpert Lumber Company, for whom Mr. Plum was then cutting, had not paid for it, and that the witness Forgay told Plum that he had better ship the lumber in the name of the Forgay Lumber Company; that Plum did so, and that the check in payment of the lumber came back in favor of the Forgay Lumber Company. While this testimony had no place in the case, we do not perceive that it worked any prejudice to the appellant in this action. The record would indicate that the whole question involved was the shipping of the lumber before it had been paid for. There is testimony in the record to the effect that Newhart had paid for the lumber in controversy on the sixth day of September, 1926, but whether this is correct or incorrect, the testimony shows sufficient title to the lumber in Newhart to sustain this action. (See *People* v. *Cain,* 7 Cal. App. 163 [93 Pac. 1037] ; 15 Cal. Jur. 899; *People* v. *Jones,* 71 Cal. 89 [11 Pac. 817].) Other cases might be cited, but these cases show that one having the right of possession, and what we may call a qualified ownership, may allege as the owner of the property.

We may further add that there is testimony in the record to the effect that no lumber was ever assigned, transferred, or sold by Newhart to the Wolpert Lumber Company.

Some minor objections not touched upon herein have been urged by the appellant, but from an examination thereof, and also of the objections which we have considered, we find nothing justifying this court in interfering with the judgment of the trial court.

The order of the court overruling the appellant's motion to set aside the verdict on the grounds of the incompetency of the juror Barlow is sufficiently covered by what we have heretofore said in this opinion and does not require separate statement.

The order and judgment of the trial court are affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.