Filed 11/7/13  P. v. Arano CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ISAAC ARANO,<br><br>    Defendant and Appellant. | F063106<br><br>(Super. Ct. No. VCF243556)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Larenda R. Delaini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Following jury trial, defendant Isaac Arano appeals his conviction on the following grounds:  (1) the trial court violated his constitutional rights to due process and a fair trial when it excluded prospective jurors without determining whether they

understood English sufficiently to participate in the proceedings; (2) the trial court violated his due process rights by failing to instruct on third party culpability; (3) the trial court erroneously instructed the jury with CALCRIM No. 370, undercutting the state's burden of proof beyond a reasonable doubt on the street terrorism charge; (4) the trial court erred in imposing enhancements pursuant to Penal Code[1] sections 186.22, subdivision (b), and 12022.7 because the enhancements arose from a single assault inflicting great bodily injury; therefore, the latter three-year enhancement must be stricken; (5) the trial court violated the provisions of section 654 by imposing a two-year term pursuant to section 186.22, subdivision (a); and (6) the abstract of judgment must be modified to accurately reflect the sentence imposed.

## BRIEF PROCEDURAL SUMMARY

In a first amended information filed March 1, 2011, the Tulare County District Attorney alleged defendant had committed assault with a deadly weapon (§ 245, subd. (a)(1), count 1), assault by means likely to produce great bodily injury (§ 245, subd. (a)(1), count 2), and had participated in a criminal street gang (§ 186.22, subd. (a), count 3). It was further alleged as to all counts that defendant personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). Multiple gang enhancements were also alleged as to counts 1 and 2. (§ 186.22, subd. (b)(1)(A), (B) & (C).) Finally, as to count 3, it was further alleged that defendant personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1).

Prior to jury selection on March 29, 2011, the trial court dismissed count 2 as duplicative. Count 1 was amended to read "'and/or by means likely to produce great bodily injury.'"[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The record is inconsistent regarding references to counts 2 and 3 following the dismissal of this count. For our purposes, we will refer to the remaining counts as they were originally numbered, to wit: counts 1 and 3.

On April 6, 2011, the jury found defendant guilty of both counts. It also found true the allegation that defendant personally inflicted great bodily injury, as well as those pertaining to the gang enhancements.

Thereafter, on June 30, 2011, defendant was sentenced to a total of 16 years in state prison. This appeal followed.

## BRIEF FACTUAL SUMMARY[3]

Abel H. and Cynthia V. were walking along the St. John's pedestrian pathway in Visalia on the evening of October 6, 2010. The couple stopped to listen to music on Cynthia's iPod, sharing the headphones. They were approached by a man on a "longboard" or larger-than-average skateboard. Abel noted the man had large ears and ear lobes with big earrings; he also had a large nose. In addition to pants, shirt and shoes, he was wearing a dark beanie cap and had a sports backpack with straps in the front. Abel was wearing pants and a shirt and a black sweater. The sweater's hood was lined with red and had red drawstrings.

When the man on the skateboard was about 12 to 15 feet away from the couple, he jumped off the skateboard and struck Abel in the head. The man had something metal in his hand; it was cupped in his palm and wrapped around his knuckles. The man shouted "South Side Kings" and asked Abel if he was a Norteño. Abel replied, "No. Hell, no." The man cursed at Abel, calling him a "bitch" and "fucker." Cynthia recalled the man calling Abel a "buster" or "chap." As the couple turned to leave the area and seek help, the man yelled, "I don't want to see you on my streets again."

Abel was bleeding heavily from a gash over his left eye. Cynthia drove the couple to Abel's home and Abel called the police.[4] Abel described his attacker to the

_____

[3] Given the nature of the arguments presented on appeal, the facts are stated generally. To the degree specific facts are relevant to a particular issue on appeal, that evidence will be discussed in detail where appropriate.

[4] The 911 tape was played for the jury. In describing his assailant to the 911 dispatcher, Abel stated the man had "piercings. Two, two ear piercings."

responding officer as a light-complected adult, 19 to 20 years of age, five feet nine inches tall, about 130 to 140 pounds. Abel stated the man was wearing a dark-colored beanie, a gray sweater, and blue pants, riding a skateboard and wearing a black backpack. Cynthia described the attacker as an Hispanic adult, 19 to 20 years old, about six feet tall and 140 pounds, wearing a dark colored beanie, possibly a T-shirt, and blue jeans. She also stated the man wore a backpack and had a large skateboard with large wheels.

After speaking to an officer at his home, Abel was taken to the hospital for treatment. He received six or seven stitches for the cut over his eye. Officers investigating the scene of the incident noted gang graffiti and located blood drops in the area.

About a week later, Abel and Cynthia were asked to view some photographs at the police department. Neither Abel nor Cynthia identified anyone as the assailant in the first six-pack of photographs each was shown. When Abel was shown a second six-pack of photographs, he identified defendant in one photograph, stating to the officer, "It's him." On the back of the photograph identified, Abel placed his initials and wrote in "might be." Abel wanted to see another picture to be certain, a picture wherein the defendant was not smiling. He wanted to see a photograph of defendant angry, because defendant had been angry at the time of the assault. A few days later, Abel was shown a second photograph of defendant. He was 100 percent certain that defendant was the man who assaulted him. When Cynthia was shown the second six-pack of photographs, she identified defendant, placed her initials on the photograph, and wrote "I think this one looks like him."

George Weaver of the Visalia Police Department's gang unit testified regarding the Sureño street gang, and more particularly, the South Side Kings and Ivanhoe Boyz cliques. Weaver provided testimony regarding the predicate offenses, as well as defendant's prior contacts with law enforcement and admitted association with Sureños.

He also testified that defendant's moniker or nickname is "Gauges" and that defendant is the only individual known to associate with the Sureños who wears large earrings.

*Defense*

Defendant's sister Lavina Arano testified he was at home on the evening of October 6, 2010, at 7:00 p.m. Defendant's mother testified similarly.

Scott Fraser testified as an expert for the defense concerning the reliability of eyewitness identifications and the various factors that can affect these identifications.

## DISCUSSION

### I.     The Excused Prospective Jurors

Defendant contends the trial court erred in excusing three prospective jurors on the basis they were not sufficiently proficient in the English language. Further, he contends defense counsel's failure to object amounted to ineffective assistance of counsel. The People assert that defendant has forfeited this claim for purposes of appeal. Nonetheless, the People maintain the trial court exercised its sound discretion in excusing the prospective jurors.

### A.     The Relevant Proceedings Below

Jury selection commenced March 29, 2011. The following colloquy occurred with regard to the three prospective jurors at issue:

> "THE COURT: Thank you, folks. Have a seat. [Madame Interpreter]?
>
> "THE INTERPRETER: [A.C.].
>
> "THE COURT: 26. Ms. [C.], do you speak English?
>
> "A PROSPECTIVE JUROR: A little bit.
>
> "THE COURT: Go back to Room 202, ma'am. You're excused.
>
> "THE INTERPRETER: [M.M.].
>
> "THE COURT: 52. Mr. [M.], do you speak English?

5.

"A PROSPECTIVE JUROR:  No.

"THE COURT:  Go back to Room 202.  You're excused.  Thank you.

"THE INTERPRETER:  [D.L.S.].

"THE COURT:  Do you see him on your list, Counsel?

"[DEFENSE COUNSEL]:  Not on mine, your Honor.

"THE COURT:  Do you go by any other names?

"A PROSPECTIVE JUROR:  No.

"THE COURT:  [D.L.S.]?

"A PROSPECTIVE JUROR:  That's the way it is.

"THE COURT:  Do you speak English, sir?

"A PROSPECTIVE JUROR:  No.

"THE COURT:  Just add him as 71.  Go back to Room 202.  Tell them you're excused."

## B.     The Applicable Law

"The requirement that California jurors understand English is statutory.  Code of Civil Procedure section 203 provides:  'All persons are eligible and qualified to be prospective trial jurors, except the following: [¶] … [¶] (6) Persons who are not possessed of sufficient knowledge of the English language ….'  A person with sufficient knowledge of English is one who is fully able to understand spoken and written English.  (*People v. Jones* (1972) 25 Cal.App.3d 776, 783.)  [¶] … [¶]

"A party may challenge an individual juror for cause based on the juror's lack of qualification or competency to act as a juror.  (Code Civ. Proc., §§ 225, subd. (b)(1)(A), 228, subd. (a).)  The challenge must be made before the jury is sworn.  (*Id*., § 226, subd. (a).)  '[A] defendant's objection to a juror's competency, first made after trial, is belated and not cognizable on appeal.'  (*People v. Hill* (1992) 3 Cal.4th 959, 985, overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)  This rule has long been applied to arguments challenging a juror's qualifications for the first time on appeal.  (See, e.g., *People v. Mortier* (1881) 58 Cal. 262, 267; *People v. Plum* (1929) 97 Cal.App. 253, 255-256; *People v. Duncan* (1908) 8 Cal.App. 186, 197-198; *People v. McFarlane*

6.

(1903) 138 Cal. 481, 490.)" (*People v. Moreno* (2011) 192 Cal.App.4th 692, 705-706 (*Moreno*).)

Absent a flagrant abuse of discretion, the trial court's ruling regarding a juror's competency, including knowledge of the English language, will be upheld. (*People v. Loper* (1910) 159 Cal. 6, 10.)

To prevail on an ineffective assistance of counsel claim, the appellant must establish two things: (1) the performance of his or her counsel fell below an objective standard of reasonableness, and (2) that prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Hernandez* (2012) 53 Cal.4th 1095, 1105; *People v. Bradley* (2012) 208 Cal.App.4th 64, 86–87.)

**C. Analysis**

By failing to object in the trial court and before the jury was sworn, defendant has forfeited this claim for purposes of appeal. (*Moreno*, *supra*, 192 Cal.App.4th at p. 706.) Nevertheless, the trial court did not abuse its discretion in excusing Prospective Jurors [A.C.], [M.M.], and [D.L.S.].

> "… Our state trials are conducted entirely in English, with translation into English provided only for those defendants and witnesses who do not speak English. There can be no doubt that, in context of deciding who is eligible and qualified to be a prospective juror within the meaning of Code of Civil Procedure section 203(a)(6), the phrase 'possess sufficient knowledge of the English language' means sufficient knowledge of the English language to understand the legal proceedings and the evidence upon which a juror would base his or her decision in any given case." (*People v. Eubanks* (2011) 53 Cal.4th 110, 130 (*Eubanks*).)

Here, when asked whether they could speak English, [M.M.] and [D.L.S.] unequivocally replied, "No." [A.C.] replied, "A little bit." We think these responses reveal that the three prospective jurors were not "'possessed of sufficient knowledge of the English language'" so as to be able to understand the proceeding and the evidence upon which those jurors would be basing any decision. (*Eubanks*, *supra*, 53 Cal.4th at p. 130.)

7.

As the People properly point out, defendant offered expert witness testimony regarding the science of eyewitness identification and the People offered expert witness testimony regarding gangs. Both subjects would require sufficient proficiency in the English language in order to properly consider the evidence before rendering any verdict. "A juror must be able to fully understand the testimony, argument and jury instructions, and participate in jury deliberations." (*Moreno*, *supra*, 192 Cal.App.4th at pp. 705-707; cf. *Ganz v. Justice Court for Arvin-Lamont Judicial Dist.* (1969) 273 Cal.App.2d 612, 623 ["This much is certain: we should have jurors who are fully able to understand spoken and written English on our juries, if justice is to be achieved"].) In this case, two individuals who did not speak English and one who spoke English only "[a] little bit" could not have fully understood testimony, argument, and jury instructions, nor could they have participated in jury deliberations. (See also *People v. Lesara* (1988) 206 Cal.App.3d 1304, 1307 [prospective juror properly excused where "he could not read, speak or understand the English language except for 'a little bit'"].) Based upon the prospective jurors' unequivocal and plain responses to the trial court's questions, further inquiry by the trial court was not necessary.

Defendant contends that defense counsel was ineffective in failing to preserve this issue for appeal. We have already determined the trial court did not abuse its discretion. In any event, as the record on appeal does not reveal why defense counsel chose not to object to the trial court's dismissal of the three jurors at issue, this ineffective assistance of counsel claim would be more appropriately raised in a habeas corpus petition. (*People v. Jones* (2003) 29 Cal.4th 1229, 1263.)

## II.     Claims of Instructional Error

### A.     Applicable Legal Standards

"'It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction. [Citations.] "[T]he fact that the necessary elements of a jury

8.

charge are to be found in two instructions rather than in one instruction does not, in itself, make the charge prejudicial." [Citation.] "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.""'" (*People v. Bolin* (1998) 18 Cal.4th 297, 328.)

"It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions." (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.) "In reviewing the purportedly erroneous instructions, 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' [Citations.] In conducting this inquiry, we are mindful that '"a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.""'" (*People v. Frye* (1998) 18 Cal.4th 894, 957, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.)

We consider the specific language challenged, the instructions as a whole, the jury's findings, and the closing arguments of counsel. (*People v. Cain* (1995) 10 Cal.4th 1, 35-36; *People v. Eid* (2010) 187 Cal.App.4th 859, 883.) We will find error only if it is reasonably likely the instructions as a whole caused the jury to misunderstand the applicable law. (*People v. Kelly* (1992) 1 Cal.4th 495, 525-527; *Estelle v. McGuire* (1991) 502 U.S. 62, 74.) Instructional error warrants reversal only if there is a reasonable probability that the defendant would have obtained a more favorable outcome without the error. (*People v. Breverman* (1998) 19 Cal.4th 142, 178.)

### B.     Third Party Culpability

Because defendant's theory at trial was one of mistaken identity, he requested a jury instruction pertaining to third party culpability. He argues that in addition to the alibi defense offered, there was evidence of another culprit in the form of the wet paint marring earlier gang graffiti and certain other inconsistencies. The People contend the trial court properly denied defendant's request for such an instruction.

9.

Defendant requested the jury be instructed as follows:

"The evidence shows that another person may have been involved in the commission of the crimes charged against the defendant. There may be many reasons why someone who appears to have been involved might not be a codefendant in this particular trial. You must not speculate about whether that person has been or will be prosecuted. Your duty is to decide whether the defendant on trial here committed the crimes charged."

Defense counsel argued there was evidence of another person present because an officer testified "there was fresh red wet dripping paint over … blue Sureño" gang graffiti. Further, counsel argued that because the area of the assault is "a battle ground" for warring gangs, "it's at least circumstantial evidence of somebody else" at the scene of the incident. However, the court denied the request, stating, "Well, that's argument, but it's not enough for an instruction regarding another perpetrator. I'm not going to give that one."

The instruction defendant requested simply told the jury the People had to prove beyond a reasonable doubt that he, rather than someone else, was the perpetrator of the crime. That instruction was fully covered by the reasonable doubt instructions in CALCRIM No. 220.[5] The People's burden was reiterated when the trial court instructed

---

[5] CALCRIM No. 220 provides as follows:

"The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the

the jury with CALCRIM No. 315—Eyewitness Identification: "The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find that the defendant [is] not guilty." With regard to defendant's alibi defense, the jury was instructed with CALCRIM No. 3400 that includes the following language: "If you have a reasonable doubt about whether the defendant was present when the crime was committed, you must find him not guilty." (See also CALCRIM Nos. 1401 [proof beyond a reasonable doubt required to prove allegations]; 3145 [same]; 3160 [same].) Accordingly, the denial of defendant's proposed instruction was not error. (E.g., *People v. Hartsch* (2010) 49 Cal.4th 472, 504 (*Hartsch*) ["[w]e have noted that similar instructions [on third party liability] add little to the standard instruction on reasonable doubt"]; *People v. Panah* (2005) 35 Cal.4th 395, 486 ["trial court is not required to give pinpoint instructions that merely duplicate other instructions"]; *People v. Bolden* (2002) 29 Cal.4th 515, 558-559 ["instruction that does no more than affirm that the prosecution must prove a particular element of a charged offense beyond a reasonable doubt merely duplicates the standard instructions defining the charged offense and explaining the prosecution's burden to prove guilt beyond a reasonable doubt"].)

Even assuming error, the omission of the requested instruction could not have affected the verdict. As the California Supreme Court has stated, "[i]t is hardly a difficult concept for the jury to grasp that acquittal is required if there is reasonable doubt as to whether someone else committed the charged crimes." (*Hartsch*, *supra*, 49 Cal.4th at p. 504.)

The "reasonable doubt instructions give defendants ample opportunity to impress upon the jury that evidence of another party's liability must be considered." (*Hartsch*, *supra*, 49 Cal.4th at p. 504.) On appeal, defendant makes much of certain inconsistencies
_____
entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

11.

concerning the size of the skateboard (whether two and a half to three feet or four feet in length), a backpack (whether black or brown), his identification as the perpetrator, and the graffiti. With particular regard to the issue of eyewitness identification, we note defendant's expert testified regarding a number of factors affecting such an identification. One of those factors was "distinctive cues." Scott Fraser defined distinctive cues as "any feature of the person observed which is unique, odd, strange, unusual, distinguishes that person from similar others." Fraser testified that detection, storage, and retrieval of such distinctive cues as they relate to eyewitness identification are "the most accurate part of human perception of others." Hence, with very distinctive ears and ear jewelry, it is reasonable to assume that the jury did not view Abel and Cynthia's identifications as inconsistent. The jury may have found, in light of these distinctive cues noted by the victim, that the eyewitness identification was compelling and strong. All of the evidence was considered by the jury—including the purported inconsistencies—and the jury simply rejected defendant's alibi defense.

In conclusion, we find the trial court did not err in refusing to instruct the jury regarding third party culpability.

## C.    CALCRIM No. 370

Defendant contends that, as to the substantive gang allegation count, the use of CALCRIM No. 370 was error because his "motive was effectively an element of the state's case," and, therefore, the instruction "undercut the state's burden of proof." The People maintain the trial court properly instructed the jury with regard to both motive and the intent required for street terrorism.

Here, the jury was instructed with CALCRIM No. 370, which provides:

> "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive.

12.

> "Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

The trial court also instructed the jury pursuant to CALCRIM Nos. 1400 (active participation in a criminal street gang) and 1401 (felony or misdemeanor committed for benefit of criminal street gang). CALCRIM No. 1401 requires the prosecution to prove the defendant "committed the crime for the benefit of, at the direction of, or in association with a criminal street gang; [¶] [a]nd, the defendant *intended* to assist further or promote criminal conduct by gang members." (Italics added.)

We rejected the same argument in *People v. Fuentes* (2009) 171 Cal.App.4th 1133 (*Fuentes*). Fuentes had been charged with a number of crimes, including active participation in a criminal street gang (§ 186.22, subd. (a)), as well as the gang enhancement (§ 186.22, subd. (b)(1)). (*Fuentes*, *supra*, at p. 1137.) This court held

> "[a]n intent to further criminal gang activity is no more a 'motive' in legal terms than is any other specific intent. We do not call a premeditated murderer's intent to kill a 'motive,' though his action is motivated by a desire to cause the victim's death. Combined, the instructions here told the jury the prosecution must prove that [the defendant] intended to further gang activity but need not show what motivated his wish to do so. This was not ambiguous and there is no reason to think the jury could not understand it." (*Id*. at pp. 1139-1140.)

Further, we stated that "[a]ny reason for doing something can rightly be called a motive in common language, including—but not limited to—reasons that stand behind other reasons. For example, we could say that when A shot B, A was motivated by a wish to kill B, which in turn was motivated by a desire to receive an inheritance, which in turn was motivated by a plan to pay off a debt, which in turn was motivated by a plan to avoid the wrath of a creditor." (*Id*. at p. 1140.) We decline to accept defendant's invitation to reconsider our holding in *Fuentes*.

And despite defendant's suggestion that the decision in *People v. Hillhouse* (2002) 27 Cal.4th 469 supports his position, it does not. There, the defendant was charged with

13.

murder and several other crimes.  The trial court gave the standard instruction on motive in a murder prosecution.  On appeal, the defendant argued the motive instruction "contradicted the other instructions, because motive *is* an element of the various crimes." (*Id*. at p. 503.)  The Supreme Court disagreed:

> "[A]lthough malice and certain intents and purposes are elements of the crimes, as the court correctly instructed the jury, *motive* is not an element.  'Motive, intent, and malice—contrary to appellant's assumption—are separate and disparate mental states.  The words are not synonyms.  Their separate definitions were accurate and appropriate.'  [Citation.]  Motive describes the reason a person chooses to commit a crime.  The reason, however, is different from a required mental state such as intent or malice." (*Id*. at pp. 503-504.)

Moreover, CALCRIM No. 370 is an accurate statement of the law.  (*People v. Howard* (2008) 42 Cal.4th 1000, 1024; *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1192-1193.)  And we presume jurors are intelligent people capable of understanding the instructions and applying them to the facts of the case.  (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

In sum, the trial court properly instructed the jury with CALCRIM No. 370 and, thus, no error occurred.

## III.    The Sentencing Errors

Defendant contends the trial court committed two errors at sentencing.  First, he maintains the trial court erred in imposing both the section 186.22, subdivision (b), and section 12022.7 enhancements as to count 1.  Second, he argues the trial court erred in imposing a three-year concurrent term on count 3 because it pertains to the same assault that forms the basis of count 1; thus, the term should have been stayed pursuant to section 654.  Respondent concedes both errors.

### A.    Enhancements Imposed as to Count 1

Section 1170.1, subdivision (g) provides that

> "when two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single

offense, only the greatest of those enhancements shall be imposed for that offense."

Section 12022.7, subdivision (a) states:

"Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

Section 186.22 provides, in pertinent part, that "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang" may be required to serve an additional 10 years if "the felony is a violent felony, as defined in subdivision (c) of Section 667.5." (§ 186.22, subds. (a), (b)(1)(C).) A violent felony is any "felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 …." (§ 667.5, subd. (c)(8).)

Because both the section 12022.7, subdivision (a) enhancement and the section 186.22, subdivision (b)(1)(C) enhancement pertain to "the infliction of great bodily injury on the same victim in the commission of a single offense," only the greater of the two enhancements may be imposed. In *People v. Rodriguez* (2009) 47 Cal.4th 501 (*Rodriguez*), the California Supreme Court held that when a defendant is convicted of a violent felony within the meaning of section 667.5, subdivision (c)(8), based on the defendant's use of a firearm under section 12022.5, the court cannot impose both the section 12022.5 enhancement and the section 186.22, subdivision (b)(1)(C) enhancement; such multiple punishment violates section 1170.1, subdivision (f). (*Rodriguez*, *supra*, 47 Cal.4th at pp. 508-509.)

Applying the Supreme Court's reasoning in *Rodriguez*, the Court of Appeal in *People v. Gonzalez* (2009) 178 Cal.App.4th 1325, 1327-1328 (*Gonzalez*), concluded that

15.

imposition of both the three-year great bodily injury enhancement and the 10-year gang enhancement violated section 1170.1, subdivision (g).  That court explained:

> "We find the Supreme Court's reasoning in *Rodriguez* persuasive and squarely applicable to the present case.  Similar to subdivision (f) of section 1170.1, subdivision (g) of the same section prohibits the imposition of more than one enhancement 'for the infliction of great bodily injury on the same victim in the commission of a single offense ….'  Here, appellant's infliction of great bodily injury to a single victim subjected him to a three-year enhancement under section 12022.7, subdivision (a).  The same infliction of great bodily injury to the same victim also turned appellant's underlying assault offense into a 'violent felony' under section 667.5, which subjected him to a 10-year enhancement under section 186.22, subdivision (b)(1)(C).  In other words, the trial court imposed *two* enhancements for appellant's infliction of great bodily injury on the same victim in the commission of a single offense.  Under the reasoning articulated in *Rodriguez*, we conclude the trial court should have imposed only the greatest of those enhancements as required by section 1170.1, subdivision (g)."  (*Gonzalez, supra*, 178 Cal.App.4th at pp. 1331-1332.)

We agree with *Gonzalez* and apply it here to find the trial court's imposition of both the three-year great bodily injury enhancement and the 10-year gang enhancement violated section 1170.1, subdivision (g).  Only the greatest of those enhancements may stand.  The proper remedy is to reverse the trial court's sentence and remand the matter to allow the court to restructure the sentence so as to not violate section 1170.1, subdivision (g).  (*Rodriguez, supra*, 47 Cal.4th at p. 509; *Gonzalez, supra*, 178 Cal.App.4th at p. 1332.)  "Because section 1170.1, subdivision (g) is dispositive, we need not address [defendant's] additional arguments that imposition of both sentence enhancements violated section 654."  (*Gonzalez, supra*, 178 Cal.App.4th at p. 1332.)

**B.     Enhancement Imposed as to Count 3**

Section 654, subdivision (a) provides as follows:

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or

conviction and sentence under any one bars a prosecution for the same act or omission under any other."

The statute "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591 (*Deloza*).) If a defendant is convicted under two statutes for one act or indivisible course of conduct, section 654 requires that the sentence for one conviction be imposed, and the other imposed and then stayed. (*Deloza, supra,* at pp. 591-592.) "Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences." (*Id.* at p. 592.) The correct procedure is to impose a sentence for each count and enhancement and then to stay execution of sentence as necessary to comply with section 654. (*People v. Duff* (2010) 50 Cal.4th 787, 795-796.) The statute serves the purpose of preventing punishment that is not commensurate with a defendant's criminal liability. (*People v. Dydouangphan* (2012) 211 Cal.App.4th 772, 781.)

In *People v. Mesa* (2012) 54 Cal.4th 191 (*Mesa*), the California Supreme Court held that section 654 does not permit separate punishment for the section 186.22, subdivision (a) crime of active participation in a criminal street gang when the only evidence of such participation was the current charged offenses, even if there were multiple objectives. (*Mesa*, *supra,* at pp. 199-200.) In this case, defendant was charged in count 3 with violating section 186.22, subdivision (a). The only evidence of his active participation, however, was the evidence associated with the other charged offenses, and particularly the assault charged in count 1. Thus, the trial court should have stayed the two-year term it imposed on count 3. (*Mesa*, *supra*, at p. 199.)

## IV. The Abstract of Judgment

Defendant asserts the abstract of judgment must be modified to reflect the trial court's oral pronouncement regarding the imposition of sentence on the street terrorism count, or count 3. The abstract wrongly references section 245, subdivision (a)(1). Respondent concedes the error.

17.

"'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citation.] … The court may correct such errors on its own motion or upon the application of the parties.' [Citation.] Courts may correct clerical errors at any time, and appellate courts … that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

During sentencing proceedings, the trial court imposed the following:

"In Count 3, the defendant is committed to state prison for the midterm of two years with an additional—well, consecutive—actually, that's double use there, the 12022.7. That will be concurrent to Count 1 with credits as set forth in Count 1."

The conviction in count 3 pertains to the section 186.22, subdivision (a) offense, or substantive gang offense. Count 3 did not allege an assault; rather, that crime was alleged in count 1. However, as noted above, the abstract of judgment erroneously reflects a conviction pursuant to section 245, subdivision (a)(1) as to count 3. Therefore, the abstract of judgment must be amended to reflect that the conviction in count 3 pertains to a violation of section 186.22, subdivision (a).

## DISPOSITION

The matter is remanded for resentencing regarding count 1. The sentence imposed on count 3 should be stayed and the abstract of judgment should be corrected to conform with the trial court's oral pronouncement concerning count 3, to wit: a violation of section 186.22, subdivision (a). Otherwise, the judgment is affirmed.

_____
Gomes, Acting P.J.

WE CONCUR:

_____
Poochigian, J.

_____
Detjen, J.